## BUCK CREEK COAL CO. v. McGARRY.

No. 17142—Opinion Filed Sept. 21, 1926.

Rehearing Denied March 8, 1927.

(Syllabus.)

Appeal and Error—Harmless Error—Instructions—Admitted Facts Justifying Directed Verdict.

Where an action is brought on a bond made to secure the wages earned by members of a local union, a subdivision of the United Mine Workers of America (in the instant case Local Union 3877), and the condition under which said bond and the liability thereon shall cease is that the principals shall notify the trustee in writing of their withdrawal from the same, and it is admitted that for work done the miners were not paid as contended by the plaintiff and that no notice was given by the principals as required by said bond, and the only allegation of error presented in briefs to this court to reverse the judgment in favor of the trustee mentioned in the bond, and who brings the suit, goes to the erroneous instructions given the jury, as well as error of the court in refusing certain other instructions, the judgment of the trial court will not be reversed for that under the admitted facts judgment should have been entered as prayed for by the plaintiff.

Error from District Court, LeFlore County; D. C. McCurtain, Judge.

Action by Andrew McGarry, trustee, against the Buck Creek Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

W. H. Fuller, Geo. M. Porter, and John L. Fuller, for plaintiff in error.

C. E. B. Cutler, for defendant in error.

BRANSON, V. C. J. Andrew McGarry, as trustee, obtained a judgment in the trial court against the Buck Creek Coal Company, a corporation, in the sum of $1,507.21. Motion for new trial was filed by the defendant, which being overruled, the defendant corporation prosecutes error here. In 1920 a contract in the form of a bond was entered into between the defendant corporation in which the said defendant corporation and the sureties on its said bond acknowledged its liability in the following language:

"Do hereby acknowledge ourselves indebted to John Wilkinson, president of District No. 21, of said United Mine Workers of America, and his successors in office as trustee for the use and benefit of all employees working in and about said mine of the said Buck Creek Coal Company for the full sum of all moneys that may be due or become due said employees, members of said local union aforesaid (Local Union No. 3877-ours). for any and all services in said mine or about same, and hereby guaranty the prompt payment of said pay roll to all employees in and about said mine until such time as the principals herein shall give to the said trustee or his successors two weeks notice in writing of their intenton to withdraw from said bond. * * *"

At the time of the execution of said bond the said John Wilkinson was the president of District No. 21, as set out in that part of the said bond above quoted. It is apparent that the said bond was made, as its language clearly shows, to protect the wages earned in and about said mine by members of Local Union No. 3877 of the United Mine Workers of America.

It is admitted that Andrew McGarry, the plaintiff herein, succeeded the said John Wilkinson as president of District No. 21 of the said United Mine Workers of America, and that if any cause of action is maintainable on said bond, he has a right to maintain the same as trustee for those beneficially interested. The answer of the defendant pleaded that neither it nor its sureties on the said bond were liable for the pay roll during the months of October and November, 1923—the time alleged by plaintiff—for that the said mine was leased during said time to one Joseph B. Carbray, who was during said time operating the same under the name of Carbray Coal Company, and that he employed the persons who worked said mine and that he was liable for their wages; that the defendant ceased to operate said mine about the 18th of September, 1923, at which time the said Carbray took charge thereof and operated the same independent of the defendant corporation and that the defend-

ant had no interest or control of the same and had no interest or part in the employment of the men, and was therefore in no wise liable for their wages. In the course of the trial the defendant introduced a memorandum of agreement bearing date September 18, 1923, executed by the defendant corporation and Joseph B. Carbray. This memorandum recites that the defendant corporation is in possession of the coal mine in question; desires to subcontract a part of same in consideration of 20c per ton for the coal mined by the said Carbray; it did grant to him certain privileges in the mine, to wit, the right to mine the certain vein of coal being mined in mine No. 1, expressly reserving the coal in the lower vein, reserving to the defendant corporation the right to go upon the property and to operate the lower vein. The said memorandum provides further as to the items of personal property connected with the mine, and then it expressly provides this:

"The rights granted under this contract shall not be assignable or transferable nor shall any part of said mine be sublet without the written consent of first party, first party reserving the right to dispose of mine or handle the lower vein as it sees fit."

Long prior to the execution of this memorandum by the defendant corporation with the said Carbray, the rights of the defendant corporation in and to said mine had been acquired from the E. D. Bedwell Coal Company for a period of ten years from the 25th day of January, 1919. The written contract under which the said E. D. Bedwell Coal Company gave the right to the Buck Creek Coal Company to operate this mine itself provided that the contract should not be assigned to any person or corporation except with the written consent of the owner. The defendant's exhibit which shows the contract with Carbray does not disclose that it was made with the written consent of the E. D. Bedwell Company. This is only important, if at all, as throwing light, if any be needed, upon the contention made by the defendant corporation that the laborers or miners knew that the defendant corporation was not operating the mine during the months of October and November, 1923, but that the same had been transferred as pleaded by the defendant to Carbray and he and he alone was responsible for the expenses incurred, including the wages of the miners as per the agreed scale.

It is admitted in the record that during the months in question the pay roll was delinquent in the sum of $1,507.21. It is admitted, also, that the notice required to be

given by the principals in the said bond had not been given to the trustee.

The petition in error filed in this court sets out as ground for reversal of the judgment that the trial court erred in overruling the demurrer to the petition. This assignment is not argued in the brief. It is therefore considered waived. Again, plaintiff in error sets out that the court erred in admitting evidence on the part of the defendant in error. The evidence complained of is not set out in the brief, and is therefore, under rule 26 of this court, not here for consideration. The plaintiff in error further complains that the court erred in refusing and ruling out competent and legal evidence on the part of the plaintiff in error. The evidence referred to is not set out in the brief, and under the said rule such alleged errors are not presented for our consideration. The fifth assignment of error is that the court erred in giving certain instructions and in refusing certain requested instructions.

We shall not go into the instruction drawn in question, for, as we view the contract, under the admissions made by the defendant, the defendant and its sureties were liable to the trustee named in said bond for the wages earned by the miners, which said bond was intended to protect until the terms and conditions of said bond were fully complied with by the makers thereof. While the defendant seeks to show that the miners knew that the mine had been transferred to the said Carbray, yet the very document relied upon as showing a transfer, and which the defendant insists the miners knew and should have taken notice of, because it was filed of record, shows that the said Carbray was only given a limited interest in the said mine, if in fact the document gave him any interest at all. Certainly, under such conditions, if the makers and sureties upon said bond sued upon herein did not expect to remain liable as per its plain and unambiguous terms, the written notice upon the trustee should have been served.

It can readily be seen that this would have given the local union, through its proper officers, the opportunity to have required another bond from the then supposed owner and operator, but until such written notice was given the members of the said local union had a right to rely upon the same as a guaranty of the wages earned. This being our conclusion, the trial court should have instructed, under the record, a verdict for the plaintiff, and no alleged error in the form of instructions as given could, as we view it, be prejudicial. The judgment of the trial court is affirmed.

NICHOLSON, C. J., and HARRISON, MA-
SON, PHELPS, HUNT, CLARK, and RILEY,
JJ., concur.

Note.—See 4 C. J. p. 1042, §3026; p. 1052,
§3034; 2 R. C. L. p. 256; 1 R. C. L. Supp. p.
479; 4 R. C. L. Supp. p. 98; 5 R. C. L.
Supp. p. 89.